EDWARD MECONCE v. HENRY MOWER, *et al.*

BAPTISM AND BURIAL—*Error in Admitting Evidence.* When by the custom of a religious society a register of baptisms and burials is kept, and a duly-verified copy of the same is offered in evidence to establish that a child registered as having been buried at a certain time is the same one that was registered as having been baptized at an earlier time, and which shows that the entries of baptism and burial were made in different names, its admission, without further evidence tending to show that they were one and the same person, is error.

*Error from Wabaunsee District Court.*

EJECTMENT, by *Meconce* against *Mower* and another. At the March Term, 1884, judgment for defendants. The plaintiff brings the case here. The opinion states the facts.

*H. A. Pierce,* and *Overmyer & Safford,* for plaintiff in error.

*A. H. Case,* for defendants in error.

Opinion by HOLT, C.: This was an action of ejectment, brought by the plaintiff in error against the defendants in error, to secure possession of an eighty-acre tract of land in Wabaunsee county. The plaintiff bases his title on these alleged facts: That he was married to Ahzh-nick, a Pottawatomie woman, daughter of Nwa-yah-ko-se, in 1852, at St. Marys, Kansas; that in 1853 a daughter was born to him and his wife as the fruit of said marriage, and that she was in early infancy christened Mary Ann Nwa-yah-ko-se at the Catholic church of St. Marys Mission, Kansas, of which these

people seem to have been members; that in 1862 or 1863, this land was allotted to his daughter as allottee No. 1173, and that in 1864 she died at St. Marys; that no other children were ever born to plaintiff and wife; that some years after, his wife Ahzh-nick died without a will, thus leaving him the sole heir of this Mary Ann Nwa-yah-ko-se; that a patent was issued subsequently to said allotment, in the name of Mary Ann Nwa-yah-ko-se, for said land. The defendants admit the allotment to Mary Ann Nwa-yah-ko-se, and that a patent was issued to a person of the same name, but contend that the Mary Ann Nwa-yah-ko-se, to whom the allotment was made and the patent issued, was not the little daughter of plaintiff and Ahzh-nick, but was another granddaughter of old Nwa-yah-ko-se by his son Moz-wa.

The vital question to be decided in this action is, the identity of the allottee. There seems to be no conflict of testimony about the marriage of plaintiff with Ahzh-nick under the name of Angelica, the daughter of old Nwa-yah-ko-se, and of the birth in 1853 of the daughter who was christened Mary Ann Nwa-yah-ko-se.

It appears in evidence that the plaintiff was a member of the Chippewa tribe of Indians, and was employed as an interpreter. His duties compelled him to be away from his family a great part of the time. His wife and daughter lived with her father, old Nwa-yah-ko-se, who testified that he is one hundred and eighteen years old. At the time of the allotment they composed one family; the old man obtained one hundred and sixty acres, the mother eighty, and the child the eighty acres in dispute. Some testimony was introduced to the effect that she died either in the year of the allotment or the year following. The plaintiff was not at home at the death of his daughter, though he testified that he had seen her after the allotment. On the other hand, a number of witnesses testified that the little daughter of plaintiff, Mary Ann, died in 1859, before the allotment was made, and that the Mary Ann who was living in the family of old Nwa-yah-ko-se was his granddaughter by his son Moz-wa. The two Mary Anns

were further distinguished in the evidence given, by the name of Mary Ann Smooth-Face, who was the daughter of this plaintiff and Angelica, and Mary Ann Pock-marked, whom defendants claim to be the allottee. There was some testimony tending to show that Mary Ann Pock-marked was not known by the name of Mary Ann until sometime in the year 1866 or 1867.

There was a good deal of conflicting evidence introduced, with no very strong preponderance in favor of either party. The defendants, to establish the death of Mary Ann Nwayah-ko-se, the "Smooth-Face," in 1859, introduced the records of St. Marys College, (a Catholic institution at St. Marys Mission, Kansas,) as follows:

"For the year of our Lord 1852, in the thirtieth day of October, I have received the mutual consent and of matrimony between Edward Meconce and Angelica the daughter of Nowe'y-ko-se before witnesses No-wey-kose and Eyen-abi.

MOUER GALLOND, S. J.

"On the 4th of August, 1853, I baptized Mary, the daughter of Edward Meconce and Angelica, his wife.

MAUR GALLOND, S. J. [Seal.]

"On the 24th day of March, 1859, was buried Mary (Kitchi No-wey-a-kesi os Vegen), about six years of age.

M. GALLOND, S. J. [Seal.]

Signed in presence of A. J. BEAKLEY."

A. Sweese, S. J., certifies under oath that the foregoing is a true and correct copy of the marriage of Edward Meconce and Angelica, the daughter of No-wey-axesi, and the baptismal register of Mary, the daughter of Edward Meconce and Angelica, his wife; also the register of the burial of Mary Kitchi No-wey-a-no-se os Vegen, as the same appears of record.

The record is authenticated in the manner provided for by §§ 380 and 381 of the civil code. The name Mary appears in the records of baptism and burial, and it also appears therefrom that the babe christened in 1853 would have been, in 1859, of about the age of the child buried; but these statements, taken in connection with the other part of the record, are not sufficient to establish the fact that Mary, the daughter

of Edward Meconce and Angelica, his wife, who was chris-
tened August 4, 1853, is one and the same person with Mary
Kitchi No-wey-a-kesi os Vegen, who was buried March 24,
1859.

We cannot say that the words "Kitchi" and "os Vegen"
are descriptive in the Indian language, which, being inter-
preted, might establish the identity; nor is there anything in
the record, outside of the register's certificate, that would es-
tablish the identity of the babe that was christened in 1853
with the young child that was buried in 1859. Neither is
there anything in the certificate of the custodian of the church
records that would indicate that this was a register of a family,
kept by the church. We can readily perceive that these records
of the church at St. Marys would have had a great, if not a
controlling influence with the jury that tried the case. If
there had been any identification of the child who died with
the babe who was baptized, the record, if true, would have
been conclusive evidence of the fact that Mary Ann, the daugh-
ter of the plaintiff, could not have been the allottee.

For the error of admitting this testimony, we think the
judgment of the court below should be reversed, and so rec-
ommend.

By the Court: It is so ordered.

All the Justices concurring.